IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JIMMY GASTON                                                                                          PLAINTIFF

v.                                         No. 5:11CV00094 JLH

LAWRENCE WEBSTER, in his individual
and official capacity as a police officer for the
Eudora Police Department; JAMES NOWDEN,
in his individual and official capacity as a
police officer for the Eudora Police Department;
DELNOR GLENN, individually and in his official
capacity as a police officer for the Eudora Police Department;
and HORACE WATKINS, in his official capacity as
Chief of Police for the Eudora Police Department                                DEFENDANTS

**OPINION AND ORDER**

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101 *et seq.*, in which Jimmy Gaston alleges that he was unreasonably stopped, arrested without probable cause, and subjected to excessive force by officers of the Police Department of Eudora, Arkansas. He has sued four officers in their individual and official capacities. The defendants have moved for summary judgment. Gaston concedes that the defendants are entitled to summary judgment on his excessive force claim, so the defendants' motion will be granted on that claim. The defendants' motion for summary judgment will be denied as to the remaining individual capacity claims against Lawrence Webster and Delnor Glenn but granted in all other respects.

**I.**

A court should enter summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). The moving party bears the initial responsibility of

demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets this burden, the nonmoving party must respond by coming forward with specific facts establishing a genuine dispute for trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *PHL Variable Ins. Co. v. Fulbright McNeill, Inc.*, 519 F.3d 825, 828 (8th Cir. 2008). A genuine dispute exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. When a nonmoving party cannot make an adequate showing sufficient to establish a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. at 2552.

## II.

A. **JIMMY GASTON'S INDIVIDUAL CAPACITY CLAIMS AGAINST DELNOR GLENN AND LAWRENCE WEBSTER.**

Jimmy Gaston was visiting friends and family in Eudora, Arkansas, when, shortly after midnight on November 7, 2010, he decided to leave Eudora and return to his home in Lonoke, Arkansas, in his black GMC pickup truck. Before he left the city limits of Eudora, however, he was stopped by Officer Delnor Glenn and arrested by Officer Lawrence Webster of the Eudora Police Department. Webster handcuffed Gaston, transported him to the police station, and detained him for forty-five minutes to an hour before releasing him to the custody of his brother, Herman Gaston.

According to the defendants, Gaston was stopped because he was suspected of causing an automobile accident and leaving the scene. The radio log for the Eudora Police Department

indicates that, at 12:29 a.m., "caller advise need officer someone just hit his truck [*sic*]." According to the defendants, the dispatcher stated on the police radio that a black GMC pickup truck had run a caller off the road on Front Street in Eudora, and the caller was following the truck in order to provide directions to the responding officers. Three officers responded to the call: Glenn, Webster, and James Nowden. Glenn testified that he followed the directions given by the dispatcher and located the caller, Xavier Jones. According to Glenn, Jones pointed to a black GMC pickup truck ahead, which he identified as the one that had run him off the road. Glenn activated his blue lights and sirens and stopped the truck identified by Jones. According to Glenn, after stopping the truck, he approached and spoke with the driver, Gaston. Moments later, Webster arrived on the scene. After speaking with Jones, Webster then approached Gaston, and Glenn went back to speak with Jones. According to Webster, Gaston then became loud and belligerent, so Webster arrested him for disorderly conduct. Both Glenn and Webster testified that Gaston smelled strongly of alcohol, had bloodshot eyes, and slurred speech. Glenn also testified that Gaston was "wobbling."

Gaston was not charged with leaving the scene of an accident or driving under the influence of alcohol. Instead, Webster wrote a citation charging him with careless driving. Gaston appeared in district court in the City of Eudora on January 26, 2011, at which the charge of careless driving was *nolle prossed*.

A traffic stop is a seizure of a person and therefore "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810, 116 S. Ct. 1769, 1772, 135 L. Ed. 2d 89 (1996). While a traffic stop need not be supported by probable cause, it does require "reasonable suspicion to believe that criminal activity may be afoot." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 750, 151 L. Ed. 2d 740 (2002) (internal quotation marks and citations omitted). An arrest is a seizure of a person and must be supported by

3

probable cause, which means that the facts and circumstances within the officer's knowledge or of which the officer has reasonably trustworthy information must be sufficient to warrant a person of reasonable caution in believing that an offense has been or is being committed. *Brinegar v. United States*, 338 U.S. 160, 175-76, 69 S. Ct. 1302, 1310-11, 93 L. Ed. 1879 (1949).

The facts as reported by Glenn and Webster would support reasonable suspicion for the stop and probable cause for the arrest. As noted, Glenn and Webster have testified that the radio dispatcher reported that a caller said that his vehicle had been hit by a black GMC pickup truck that failed to stop. Webster and Glenn also say that the caller, Jones, identified the truck being driven by Gaston as the truck that had caused the accident. Thus, on their testimony, there was reasonable suspicion to stop Gaston and probable cause to arrest him for careless driving in violation of Ark. Code Ann. § 27-51-104(a) and for leaving the scene of the accident in violation of Ark. Code Ann. §§ 27-53-102 and 103. Glenn and Webster also testified that Gaston smelled strongly of alcohol, had bloodshot eyes, slurred his speech, and was "wobbling." The defendants thus argue that Webster had probable cause to arrest Gaston for driving while intoxicated in violation of Ark. Code Ann. § 5-65-103(a). Finally, Webster testified that Gaston became loud and belligerent, which gave him probable cause to arrest him for disorderly conduct pursuant to Ark. Code Ann. § 5-71-207.

Glenn and Webster contend that the facts as they reported them are undisputed because Gaston cannot dispute their account of what the radio dispatcher reported on the radio, nor their account of what Jones told them when they spoke to him.

Gaston, in contrast, contends that there is evidence from which a jury could conclude that the traffic stop and arrest were pretexts either in an effort to extort money from him, or in an effort by Webster to retaliate against Willie Gaston, another brother of Jimmy Gaston who had testified against Webster in a criminal case, or both. Gaston denies that he was involved in an automobile

4

accident and denies that he forced anyone off the road. After he was stopped, he asked the officers to look at his pickup truck to confirm that it was not damaged and thus had not been in an accident, but they refused. He denies that Jones was present when he was stopped. He testified that he repeatedly asked to speak with Jones and to see the damage to Jones's vehicle but was never allowed to do either. He says that he never received a claim from Jones, an insurance company for Jones, or anyone else. He denies that he engaged in any kind of conduct that was disorderly. He denies that he had been drinking. He testified that the officers told him that they would release him without charge if he would pay $500 to Jones, whom he never saw or met. He points out that he was charged with careless driving, not with leaving the scene of an accident or disorderly conduct, and the charges were *nolle prossed* when he appeared for court.

The motion for summary judgment on the individual capacity claims against Glenn and Webster, as noted, is based on Glenn and Webster's account of what the radio dispatcher and Jones said. As the defendants point out, Gaston did not hear the radio dispatcher, nor did he hear any conversations between the officers and Jones, so, according to them, he is not in a position to dispute Glenn and Webster's account of those conversations. Nevertheless, on this record, the Court is not required to accept the testimony of Glenn and Webster as undisputed. Summary judgment should not be denied simply because the opposing party contends that the moving party's witnesses should not be believed, but "summary judgment is not appropriate where the opposing party offers specific facts that call into question the credibility of [movant's] witnesses." *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1158 (Fed. Cir. 2004). *Cf. United States v. Real Property Located at 3234 Wash. Ave. N., Minneapolis, Minn.*, 480 F.3d 841, 845 (8th Cir. 2007). Here, specific facts in the record call into question the credibility of Glenn and Webster.

Both Glenn and Webster testified that Jones was present when Gaston was stopped. Webster testified that Jones was cursing loudly fifteen or twenty feet from Gaston. Gaston, on the other hand, testified that there was no one present other than the officers. Gaston testified he never saw Jones. If, as Webster testified, Jones was cursing loudly within fifteen or twenty feet from Gaston, then Gaston would in all likelihood have seen and heard him. Whether Jones was present at the scene is therefore a material fact as to which there is a genuine dispute. Similarly, Glenn and Webster testified that Gaston smelled strongly of alcohol, had bloodshot eyes, slurred his speech, and was "wobbling." In contrast, Gaston testified that he had drunk no alcohol during that evening. His brother, Herman Gaston, picked him up from the police station when he was released, and Herman testified that Gaston did not smell of alcohol. Shortly after being released, Gaston went to the home of another brother, Willie Gaston, who similarly testified that Gaston did not smell of alcohol. Whether there was reason to believe that Gaston had been driving while intoxicated is thus a material fact as to which there is a genuine dispute. In addition, Gaston and Webster give contradictory testimony as to the nature of Gaston's behavior. According to Webster, Gaston became loud and belligerent, but Gaston denies so behaving.

There are other discrepancies in the record that preclude summary judgment. For example, the incident report, which was written by Webster on November 7, 2010, states that Jones reported a "Hit and Run" by Gaston with property damage in the amount of $500, but the report provides no description of the vehicle that Jones was driving. The report does not state the make, model, year of manufacture, or color of Jones's vehicle, nor does it provide the vehicle identification number, the license plate number, or any other information from which the allegedly damaged vehicle could be identified.

Apart from the incident report, the only contemporaneous document is the citation issued by Webster to Gaston for careless driving. That citation form includes boxes for the officer to check "yes" or "no" as to whether an accident was involved. Webster checked "no." Thus, the incident report prepared is contradicted by the citation as to whether an accident was involved, even though both documents were prepared by Webster on November 7, 2010.

Discrepancies also exist concerning the written statement that Glenn prepared on May 2, 2011, which was approximately two weeks after the commencement of this action on April 20, 2011. In that statement, Glenn said that he stopped the black GMC pickup truck being driven by Gaston, and he approached the truck and spoke with Gaston before Webster arrived. Gaston testified that the only officer who came up to his truck was Webster, who was the second one on the scene. Gaston testified that the officer who stopped him never approached him and that he did not see Glenn that evening. According to Glenn's written statement, Jones said that all he wanted was for his truck to be fixed and Gaston promised that he would fix Jones's truck because he did not want a DWI due to the fact that he had a commercial driver's license. Glenn said in his statement that he left the decision as to what charges to file to Webster, Jones, and Gaston. According to Glenn, Gaston agreed to fix Jones's vehicle, and Webster decided not to charge him with a DWI. This portion of Glenn's written statement does not square with Webster's testimony. Based on Glenn's statement, Gaston was cooperative and agreed to pay for Jones's vehicle to be fixed in return for avoiding a DWI charge. According to Webster, however, Gaston was not cooperative; instead, Gaston was so belligerent that Webster arrested him for disorderly conduct. Again, contradictions abound.

Neither party has submitted any affidavit or other testimony from Jones. While Glenn states that he examined Jones's vehicle and photographed the damage, no photograph has been offered in support of the motion for summary judgment.

For the reasons stated, there is a genuine dispute as to whether Glenn had reasonable suspicion to stop Gaston and whether Webster had probable cause to arrest him.

Glenn and Webster contend that if they are not entitled to summary judgment on the merits, they are entitled to qualified immunity. The doctrine of qualified immunity protects an officer from liability for damages when the officer's conduct does not violate clearly established rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009). Qualified immunity applies regardless of whether the officer's error "is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id*. (internal quotation marks and citations omitted).

On the evidence presented here, Glenn and Webster are not entitled to qualified immunity. On their account of the facts, the traffic stop was supported by reasonable suspicion, and the arrest was supported by probable cause. As explained above, however, their account of the facts is disputed.

The evidence recited above is susceptible to two different interpretations. Either Jones had damage to his vehicle and told the officers that Gaston caused it, in which case the officers' actions were justified; or the stop and arrest were pretextual, in which case the officers violated Gaston's clearly established rights of which a reasonable officer would have known. There is no middle ground in this case. Because resolution of the case depends on whom to believe, summary judgment must be denied.

Finally, Glenn and Webster contend that they are immune from suit under state law pursuant to Ark. Code Ann. § 21-9-301. The Supreme Court of Arkansas has held that this statute provides city employees with immunity from civil liability for negligent acts but not for intentional torts. *City of Farmington v. Smith*, 366 Ark. 473, 478, 237 S.W.3d 1, 5 (2006). Although Glenn and Webster seem to argue that that interpretation of the statute is contrary to the provision's plain language, this Court is obligated to follow the Arkansas Supreme Court's interpretation of an Arkansas statute. *Medical Protective Co. v. Bell*, 912 F.2d 244, 245 (8th Cir. 1990). Therefore, as Gaston has alleged intentional acts rather than negligence, the defendants are not immune under section 21-9-301.

B.   **JIMMY GASTON'S INDIVIDUAL CAPACITY CLAIMS AGAINST JAMES NOWDEN AND HORACE WATKINS.**

James Nowden was an officer of the Eudora Police Department who came to the scene of the traffic stop in question. He did not stop Gaston, nor did he arrest him. Indeed, he had no contact with Gaston that evening. Gaston testified that some time later Nowden spoke to Herman Gaston and repeated the demand for $500, but Herman's testimony did not support that allegation. According to Herman, Nowden asked "Did you-all ever take care of that situation with the young man's truck?" Nowden did not demand money in return for the charges being dropped. Nowden's testimony was that Webster told him that Gaston had agreed to fix Jones's truck, and he later asked Herman whether that had been done. There is no evidence in which a reasonable jury could conclude that Nowden stopped Gaston, arrested Gaston, or engaged in any conspiracy to commit a tort against him. Summary judgment is therefore granted in favor of James Nowden.

Horace Watkins is the Chief of Police of the Eudora Police Department. He was not present at or involved with the stop or the arrest. Gaston's claim against Watkins is not that he participated in the stop and the arrest; rather, his claim is that Watkins is liable for failing to train and supervise

the officers. As evidence in support of that claim he offers the testimony of Watkins that sometime after the arrest in question the Commission on Standards and Training informed him that Webster had failed to complete an auxiliary course within the required one-year timeframe and that an officer not involved in this action similarly had failed to maintain his certification. Watkins discharged both officers when he learned that they had not met the requirements for continuous certification.

The Eighth Circuit has held that a supervisor may be liable in his individual capacity for failing to train a subordinate officer if the failure "amounts to deliberate indifference to the rights of the persons with whom the police come into contact." *Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010) (citation omitted). In addition, the plaintiff must prove that the failure to train actually caused the constitutional deprivation. *Id*. Here, there is no evidence from which a jury reasonably could conclude that Watkins's alleged failure to train and supervise officers amounted to deliberate indifference or that it actually caused the constitutional deprivation. Therefore, summary judgment is granted to Horace Watkins in his individual capacity.

**C.     JIMMY GASTON'S OFFICIAL CAPACITY CLAIMS.**

Gaston also makes claims against the officers in their official capacities. The claims against the officers in their official capacities are, in effect, claims against the City of Eudora. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). The City of Eudora could be liable for a violation of Gaston's constitutional rights if that violation resulted from an official City policy or a pattern of unconstitutional conduct that is so persistent and widespread as to constitute a custom or usage with the force of law. *See Monell v. Dept. of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978). Here, the undisputed evidence establishes

that the City of Eudora has written policies that govern traffic stops and arrests and that are constitutional. Gaston has furthermore failed to present evidence that would show that the violations of which he complains represent practices that are so persistent and widespread as to be a custom or usage with the force of law. Consequently, the City of Eudora is entitled to summary judgment, which means that the official capacity claims must be dismissed.

## CONCLUSION

For the reasons stated, the defendants' motion for summary judgment is granted in part and denied in part. Document #18. The motion for summary judgment is granted with respect to all of Jimmy Gaston's excessive force claims, his individual capacity claims against James Nowden and Horace Watkins, and all of his official capacity claims. Summary judgment is denied as to Jimmy Gaston's remaining individual capacity claims against Lawrence Webster and Delnor Glenn.

IT IS SO ORDERED this 12th day of January, 2012.

*J. Leon Holmes*

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE